OPINION
Leo E. Scruggs, defendant-appellant, appeals a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated robbery, in violation of R.C. 2911.01(B).
On November 12, 1998, Detective Douglas Eckhart, a member of the narcotics tactical entry team ("INTAC") of the Columbus Police Department, participated in the entry of a two-story house with a search warrant. To disorient the occupants of the house momentarily, the INTAC team shot wooden pellets called "knee knockers" into the first floor of the house before entering. Eckhart, who was carrying a semiautomatic magazine-fed rifle with a flashlight attached to the barrel, was the lead officer of the third two-officer team assigned to secure the second floor. As Eckhart and his partner, Detective Bruce Orlov, proceeded up the steps to the second floor, Eckhart saw appellant look out a bedroom door. When appellant saw the officers, he slammed the door shut. Eckhart and Orlov went into the bedroom, but did not immediately see appellant. They checked various areas of the room but still could not locate appellant.
Eckhart testified that, knowing there was no other place where appellant could have hidden, he began to search a closet. While searching the closet, Eckhart called for appellant to come out of the closet and announced that he was a police officer. Because the closet was dark, Eckhart used the flashlight attached to his rifle to see inside. Eckhart then saw appellant's legs on a recessed shelf in the back of the closet, ordered appellant to come out of the closet, and again announced that he was a police officer. Appellant grabbed the end of Eckhart's rifle but because the rifle was attached to Eckhart's body with a sling, he could not seize the rifle. Eckhart testified that as he and appellant wrestled with the gun, Eckhart lost his balance and fell into the closet. Eventually, Eckhart regained his footing and pulled appellant out of the closet. Once appellant was out of the closet, Eckhart finally jerked the rifle from his hands. Eckhart testified that he and appellant wrestled with the gun for approximately thirty seconds. Appellant was then taken into custody.
Appellant was indicted on one count of aggravated robbery, to which he pleaded not guilty. A jury trial was held on March 24, 1999, and on the same day the jury returned a verdict of guilty. On May 11, 1999, the court sentenced appellant to a term of incarceration of six years. Appellant now appeals, asserting the following assignments of error:
First Assignment of Error:
 The judgment of the trial court is not supported by sufficient evidence.
Second Assignment of Error:
 The trial court committed reversible error and deprived Appellant of due process of law by entering judgment of conviction that was contrary to the manifest weight of the evidence.
Appellant argues in his first assignment of error that there was insufficient evidence to find him guilty of aggravated robbery. The concept of legal sufficiency of the evidence refers to whether the conviction can be supported as a matter of law.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of syllabus.
Appellant was indicted for the first-degree felony offense of aggravated robbery, in violation of R.C. 2911.01(B), which provides:
 No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
 (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;
 (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.
In the present case, construing the evidence in favor of the prosecution, there was sufficient evidence presented to find that appellant had violated R.C. 2911.01(B).
Detective Eckhart testified that the INTAC unit members wear black "battle dress," black tee shirts, face garments, bulletproof body armor, and load-bearing vests. The vests are embossed with "police" on the front and back. They also wear cavalier ballistics helmets that are black and embossed with the police emblem. Eckhart testified that they take numerous precautions to make the occupants of a residence aware that they are police:
Q. What are those precautions?
 A. Prior to breaching the door, someone knocks and announces, which they knock on the door and announce that we are the police. Once the door is breached, all through the house during the initial assault of the house until the house is — until your assigned areas, officers holler, police, search warrant. Police, search warrant. So we make sure that there is no misunderstanding that we are the police.
Q. What tone of voice and volume is used?
 A. Very loud. * * * So I make sure that they know, and so do the other officers, that we are the police coming through the door.
Eckhart testified that when he and Orlov reached the top of the steps of the second floor, a door to a bedroom opened, and he saw appellant look at him from the doorway. He testified that he had no doubt that appellant saw him. Appellant went back into the room and slammed the door shut. At that time, there were still officers yelling very loudly "police, search warrant" throughout the house. Eckhart then entered the room but did not see appellant.
After checking other areas of the room, Eckhart and Orlov went to the closet. Eckhart started moving the clothes to the side and saying, "I know you are in here, police, come out." Pointing his rifle into the closet and using the attached flashlight to light the interior of the closet, he eventually saw appellant's legs on a shelf in a recessed portion of the closet. At that point, Eckhart started yelling, "Let me see your hands, police officer, come out of there." Appellant then reached out and grabbed the end of the rifle. Eckhart tried to pull back, but appellant did not let go. Appellant continued to jerk the rifle, knocked Eckhart off balance, and pulled him inside the closet. Using both hands, appellant held onto the rifle, and he and Eckhart wrestled with the rifle inside the closet. Eckhart eventually lunged backward, pulling appellant out of the closet. Appellant continued to hold onto the rifle as he lay on the floor of the room, and Eckhart had to tug it away from him. Eckhart testified that they wrestled for the rifle for approximately thirty seconds.
Detective Orlov testified that as Eckhart pointed the rifle into the closet, he told appellant to put his hands up, identified himself as a police officer, and told him they had a search warrant. He then heard Eckhart tell appellant to let go of his rifle and saw Eckhart get pulled into the closet. Orlov testified that after Eckhart pulled appellant from the closet, appellant was still holding onto the barrel and sight system of the rifle with both hands. He also testified that the room was lit with an overhead light, and everything in the room was clearly visible. He testified that after Eckhart got appellant out of the closet, he and Eckhart struggled for another thirty seconds to get appellant to release the rifle.
Based upon our careful consideration of the record, and construing the evidence in favor of the prosecution as is required in a sufficiency analysis, we find that a reasonable jury could have found that the prosecution sufficiently proved the elements of aggravated robbery beyond a reasonable doubt. There was sufficient testimony that appellant knowingly attempted to remove a deadly weapon from Detective Eckhart. Eckhart testified that appellant grabbed the end of his rifle and pulled on it hard enough to pull him into the closet where appellant continued to jerk on the rifle. Both Eckhart and Orlov testified that appellant was pulling on the barrel of the rifle and continued to try to wrestle it from Eckhart for thirty seconds after they dragged him out of the closet and onto the floor. Orlov testified that appellant was holding onto the barrel and sight of the gun and not the flashlight. Orlov also testified that the room was lit and he could clearly see the rifle in Eckhart's hands.
There was also sufficient evidence that appellant knew or had reasonable cause to know that Eckhart was a law enforcement officer. Eckhart testified that his vest and helmet had "police" embossed on them and that appellant saw him as he reached the top of the stairs. He also testified that the officers were repeatedly yelling "police, search warrant" as they walked through the house. Both Eckhart and Orlov testified that Eckhart stated that he was a police officer numerous times as he searched the closet and discovered appellant hiding. Therefore, we find that construing the evidence most strongly in favor of the prosecution, the evidence was legally sufficient to sustain a verdict against appellant for a violation of R.C. 2911.01(B). Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the judgment was against the manifest weight of the evidence. The concept of manifest weight of the evidence is different from an examination of the sufficiency of the evidence. Jenks, supra, paragraph two of the syllabus. In order for an appellate court to reverse a judgment of conviction as against the manifest weight of the evidence, it must disagree with the fact finder's resolution of conflicting testimony. Thompkins, supra, at 387. Therefore, the court, in examining the evidence offered at trial, sits as the "thirteenth juror." Id. This does not allow the reviewing court to lightly substitute its judgment for that of the jury. Reversal may only be had when:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." [Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.]
In addressing the sufficiency of the evidence, we already discussed the evidence presented by the prosecution. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed. Importantly, we find that the evidence does not "weigh heavily against the conviction," and, thus, appellant's aggravated robbery conviction was not against the manifest weight of the evidence. The jury could have reasonably found that appellant knowingly attempted to remove a deadly weapon from Detective Eckhart. Further, the jury could have reasonably concluded that appellant knew or should have reasonably known that Detective Eckhart was a law enforcement officer. For the reasons set forth above, the jury verdict finding appellant had committed aggravated robbery, in violation of R.C. 2911.01(B), was not against the manifest weight of the evidence. Therefore, the second assignment of error is overruled.
Accordingly, we overrule both of appellant's assignments of error, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.